**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NIGEL LEE WHITTAKER,

    Petitioner,

                                    CASE NO. 10-11051

v.                                HONORABLE DENISE PAGE HOOD
                                      UNITED STATES DISTRICT COURT

GARY CAPELLO,

       Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

       Nigel Lee Whittaker ("Petitioner"), confined at the Baraga Maximum Correctional Facility in Baraga, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his convictions of four counts of first-degree criminal sexual conduct (CSC I), M.C.L. § 750.520b(1)(c), one count of armed robbery, M.C.L. § 750.529, and one count of first-degree home invasion, M.C.L. § 750.110a(2). The trial court sentenced petitioner as a third habitual offender pursuant to M.C.L. § 769.11. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

1

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals in affirming petitioner's conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> At the time of the events underlying this appeal, the 60-year-old female victim was undergoing cancer treatment, which required the use of a feeding tube. At approximately 1:00 a.m., defendant entered the victim's bedroom and awakened her as she slept. The victim felt "a nudge against [her] back and when [she] turned over . . . [defendant] was standing right over [her] bed." The victim testified that defendant "told me that he had a gun and he was [going to] blow my head off if I didn't be quiet." According to the victim, defendant then told her to remove her underwear and engaged in sexual acts with her. The victim testified that she tried to call for help, but defendant told her "to shut up or he'll kill [her]."
>
> The victim testified at trial that defendant committed three acts of vaginal penetration and one act of oral penetration. According to the victim, when defendant observed the feeding tube, he stated that "it better not get in my way or I'll pull it out." The victim testified that this statement "definitely [made her] scared more than [she already] was." She also testified that she told defendant to stop because she had heart problem [sic], but that defendant told her to "shut up" and put his hand over her mouth.
>
> The victim testified that after defendant had committed the sexual acts, he asked for money. The victim testified that she told defendant that there was $200 in the office. She took defendant to the office and gave him the money. Although the victim never saw a gun, she testified that

2

she believed defendant's threats and thought that defendant was armed. She testified that "[w]hen I would hesitate to do something, he would more or less remind me I have a gun, I will pop you." After defendant had taken the money, he told the victim to return to her bedroom. According to the victim, defendant then engaged in further sex acts with her, including vaginal and oral penetration.

Thereafter, defendant apparently asked the victim whether she had any food, and she prepared food for him in the kitchen. The victim testified that defendant did not allow her to turn on the lights, but that two small lights were illuminated in the kitchen and she could see defendant's face. As defendant ate, he spoke with the victim. He apparently told her that he was very tired and had to get up for work the next day. The victim testified that she told defendant that there was an empty apartment in the basement, and that he could sleep there. When she took defendant to the basement apartment, she turned on the lights and "that's when [the victim] got an exact look at him." The victim testified that she asked defendant how he entered the building, and that he responded that the door had been unlocked.

The victim then returned upstairs. She observed that a porch window had been opened and the screen had been ripped. The victim then heard the building's maintenance man, Nick Sanchez, and she called out to him. Sanchez helped the victim into his apartment, where Sanchez called the police. When the police arrived, they transported the victim to the hospital, where she received treatment and medical staff performed a rape kit.

Other police officers went to the basement apartment, observing that the door was closed and locked. The officers requested that a supervisor come to the scene, and after knocking on the door with no response, the supervisor ordered a forced entry. Upon entering the basement apartment, officers observed defendant lying on a bed next to the door. Officers took defendant into custody but found no weapons on his person. They did, however, find $200 in cash, which fell out of defendant's clothing. After advising defendant of his *Miranda* rights, officers obtained a warrant to collect a DNA sample from defendant. The victim later identified defendant's photograph as that of her attacker. A photographic line-up was performed because the victim had been admitted to the hospital and was unable to observe a live line-up. Police laboratory testing was performed on a bed sheet recovered from

3

the victim's bedroom. The test showed the presence of semen and blood, which contained DNA consistent with that collected from defendant.

Before trial, the prosecution indicated that the DNA expert who actually conducted the laboratory analysis could not be present at trial. Defense counsel objected, asserting that defendant "wants the person who actually conducted the test." The trial court nevertheless allowed substitution of a different DNA expert in the place of the expert who actually conducted the analysis and prepared the report.

Following defendant's convictions, defense counsel moved for a new trial. Counsel argued that it had not been proper for one laboratory analyst to testify from notes and a report prepared by a different, nontestifying laboratory analyst. Defense counsel argued that the expert who actually conducted the laboratory analysis should have testified, and that the substitution of a different DNA analyst raised Confrontation Clause and hearsay issues. Defense counsel asserted that the DNA report was testimonial in nature, and that defendant was denied the right to confront the person who actually prepared the report. The prosecution asserted that DNA reports are not testimonial, and also suggested that any confrontation error was harmless because the other evidence was sufficient to sustain the convictions. The trial court stated that there was "a very overwhelming amount of evidence" in this case, and denied defendant's motion for a new trial.

*People v. Whittaker*, No. 267043, 2007 WL 914342, at *1-3, (Mich. Ct. App. Mar. 27, 2007)(internal footnote omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 479 Mich. 867

(2007)(unpublished table decision).

Petitioner then filed a post-conviction motion for relief from judgment with

the trial court, which was denied. *People v. Whittaker,* No. 05-007110-01 (Wayne

County Cir. Ct. Mar. 17, 2009). The Michigan appellate courts denied petitioner's

leave to appeal. *People v. Whittaker,* No. 296914 (Mich.Ct.App. July 22, 2010);

4

*lv. den.* 488 Mich. 1083 (2011) (unpublished table decision).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. DEFENDANT IS ENTITLED TO A NEW TRIAL AS HE WAS DENIED HIS RIGHT TO SECURE PROPER POST-CONVICTION RELIEF DUE TO INACCURACIES IN HIS TRIAL TRANSCRIPTS.

II. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR JURY WHEN CONVICTED "ON THE LAW" ON THE BASIS OF LEGALLY INSUFFICIENT EVIDENCE REGARDING ALL CHARGES IN HIS CASE.

III. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN HE RECEIVED A VERDICT AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

IV. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE JURY RENDERED A COMPROMISED VERDICT UNSUPPORTED BY THE PROOFS.

V. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTIONS TO ADJOURN AND FOR A NEW TRIAL.

VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF AN OFFENSE FOR WHICH HE WAS NEVER CHARGED.

VII. DEFENDANT-APPELLANT SHOULD BE ENTITLED TO A NEW TRIAL ON THE BASIS OF JUDICIAL BIAS WHERE THE TRIAL JUDGE WAS BIASED AND ABUSED HER AUTHORITY.

VIII. DEFENDANT-APPELLANT IS ENTITLED TO A REVERSAL OF HIS CONVICTIONS AS THE JURY WAS PERMITTED TO RENDER A COMPROMISED GUILTY VERDICT THAT WAS UNSUPPORTED BY THE PROOF OF EVIDENCE.

IX. DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTIONS TO ADJOURN AND THE MOTION FOR A NEW TRIAL.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state

6

courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The "AEDPA thus imposes a 'highly deferential standard for evaluating

state-court rulings,'and 'demands that state-court decisions be given the benefit

of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v.

Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24

(2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct.

770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The

Supreme Court has emphasized "that even a strong case for relief does not

mean the state court's contrary conclusion was unreasonable." *Id.* (citing

*Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to §

2254(d), "a habeas court must determine what arguments or theories supported

or...could have supported, the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision" of the Supreme

Court. *Id.*

    "[I]f this standard is difficult to meet, that is because it was meant to be."

*Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the

AEDPA, does not completely bar federal courts from relitigating claims that have

previously been rejected in the state courts, it preserves the authority for a

7

federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

## III. Discussion

### A. Claims # V and IX. Abuse of discretion by denying the motions to adjourn and motion for a new trial.

Petitioner's brought claims # V and # IX on his direct appeal before the Michigan Court of Appeals and the Michigan Supreme Court. Both claims are identical and will be addressed together.

Petitioner first contends that his constitutional rights were violated when the trial court denied his motions to adjourn and his motion for an new trial.

8

In rejecting this claim, the Michigan Court of Appeals stated:

Defendant first argues that the trial court erred in failing to grant a continuance or adjournment for the purpose of allowing him to obtain an independent DNA expert witness. We disagree.

### A. Preservation of the Issue and Standard of Review

Defendant preserved this claim for our review by timely requesting an adjournment before trial. *People v. Snider*, 239 Mich.App 393, 421; 608 NW2d 502 (2000). We review the trial court's denial of a motion for a continuance or adjournment for an abuse of discretion. *People v. Coy*, 258 Mich.App 1, 17; 669 NW2d 831 (2003). The abuse of discretion standard "acknowledges that there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v. Babcock*, 469 Mich. 247, 269; 666 NW2d 231 (2003).

### B. Analysis

A defendant must show good cause and diligence in requesting a motion for adjournment. *Coy*, supra at 18. However, even with a showing of good cause and diligence, a trial court's denial of a motion for adjournment will not be reversed "unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id.* at 18-19. A good cause determination may be based on the following factors: " 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.'" *Id.* at 18 (citation omitted).

Defendant moved for an adjournment five days before trial for the purpose of obtaining an independent expert to review the DNA evidence. Defendant argued below that the DNA report was submitted late, that the report was complex, and that an independent witness was therefore needed. The trial court denied the motion, noting that the trial date had already been delayed to obtain the DNA evidence in the first instance. The court pointed out that both parties knew about the DNA evidence and that they should have made timely arrangements to obtain necessary witnesses. The court also indicated that there was still at least one week until the first witness testified, and suggested that defense counsel still had enough time to obtain an

9

independent witness if he chose to do so. Of particular note, defendant never argued in support of his motion that the requested adjournment would allow the author of the DNA report to be present at trial. Defendant did not raise this specific argument until his motion for a new trial, obviously filed well after the trial court had ruled on the motion for adjournment.

We conclude that the trial court properly denied defendant's motion because defendant did not act with good cause or due diligence in moving for the adjournment. *Id.* at 18. Defendant waited until five days before trial to request the adjournment, and knew full well that one adjournment had already been granted in order to obtain the DNA evidence. More importantly, defendant at no time asserted the constitutional right to confront the author of the DNA report, and objected to the unavailability of the DNA report's author only after the trial court ruled on his motion for adjournment. Therefore, the trial court was not aware of defendant's constitutional Confrontation Clause argument at the time of the motion, and correctly noted that both sides had possessed sufficient opportunity to obtain independent experts before trial. The trial court's denial of defendant's motion for adjournment fell within a reasonable and principled range of outcomes. *Babcock, supra* at 269. The trial court did not abuse its discretion in denying defendant's motion.

*Whittaker*, 2007 WL 914342, at *2-3.

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. *See Burton v. Renico*, 391 F. 3d 764, 772 (6th Cir. 2004). In order to obtain habeas relief, a habeas petitioner must show that the denial of his request for a continuance resulted in actual prejudice to his defense. *Id.;See also Powell v. Collins*, 332 F. 3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have made relevant

10

witnesses available or otherwise benefitted the defense. *Powell*, 332 F. 3d at 396.

In the present case, petitioner is unable to show that he was prejudiced by the trial court's refusal to grant an adjournment of the trial.  As noted by the Michigan Court of Appeals, "the trial date had already been delayed to obtain the DNA evidence in the first instance.  The court pointed out that both parties knew about the DNA evidence and that they should have made timely arrangements to obtain necessary witnesses.  The court also indicated that there was still at least one week until the first witness testified, and suggested that defense counsel still had enough time to obtain an independent witness if he chose to do so." *Whittaker,* 2007 WL 914342 at *3.  Furthermore, there is no evidence of record to suggest that defense counsel attempted to obtain an independent witness and was unable to do so within the time allotted.  Petitioner's claim that the trial court's denial to grant a continuance is an abuse of discretion is meritless.

Petitioner also contends that the trial court abused its discretion by denying his motion for a new trial, based on a violation of the Confrontation Clause. Petitioner alleges that admission of the police laboratory report concerning the DNA results constituted inadmissable hearsay and its admission

11

by a nontestifying police expert amounted to a Confrontation Clause violation.[1]

The Michigan Court of Appeals rejected petitioner's claim in part by finding

that any error in admitting the DNA report was not outcome determinative:

> [A]ny claim of error, whether analyzed as a preserved nonconstitutional claim of improper hearsay or as an unpreserved constitutional claim of Confrontation Clause error, is insufficient to warrant appellate relief because any error was not outcome-determinative. *People v. Phillips*, 469 Mich. 390, 396-397; 666 NW2d 657 (2003), quoting *People v Lukity*, 460 Mich. 484, 495-496; 596 NW2d 607 (1999) (holding that in cases of preserved, nonconstitutional error, "a defendant must demonstrate ... that it 'is more probable than not that the error was outcome determinative' "); *People v. Carines*, 460 Mich. 750, 763-764; 597 NW2d 130 (1999) (holding that unpreserved constitutional claims are reviewed for outcome-determinative plain error).

> Even absent the nontestifying police expert's notations and report, the other evidence against defendant was overwhelming, and we conclude that the jury would have likely found defendant guilty beyond a reasonable doubt. The victim testified at trial concerning defendant's alleged actions and the details of defendant's crimes. Moreover, the testimony of police officers regarding defendant's arrest fully corroborated the victim's version of events. The evidence showed that defendant was found in the empty basement apartment, that a window in the victim's building had been forced open, and that defendant

---

[1] Respondent contends that petitioner's Confrontation Clause claim is procedurally defaulted because he did not properly preserve the issue for appellate review. Petitioner, however, did object to the admission of the DNA expert's report on hearsay grounds prior to trial, although he did not object to its admission on the basis of a Confrontation Clause violation. Petitioner's counsel also objected to the admission of the DNA expert's report on Confrontation Clause grounds in a post-verdict motion for a new trial. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In light of the complexity of the procedural default issue, as well as the fact that petitioner's Confrontation Clause claim is without merit, the Court will ignore the procedural default issue and address the merits of the claim.

possessed $200 in cash at the time of his arrest.

Defendant asserts that in the absence of the DNA analysis and nontestifying expert's report, there was insufficient evidence to sustain his CSC convictions. He therefore contends that the erroneous admission of the DNA evidence at trial was outcome-determinative. It is well settled that the jury has the best opportunity to determine the credibility of the witnesses. *People v. Wolfe*, 440 Mich. 508, 514-515; 489 NW2d 748, amended 441 Mich. 1201 (1992). "It is the jury's task to weigh the evidence and decide which testimony to believe." *People v. Jones*, 115 Mich.App 543, 553; 321 NW2d 723 (1982).

In the present case, the jury evidently chose to assign greater credit to the victim's testimony than to that of defendant. Defendant's suggestion that he would have been acquitted on the CSC charges in the absence of the DNA evidence is mere conjecture, and is unsupported by the law. Michigan has rejected the rule that a victim's testimony must be corroborated in order to sustain a conviction of rape. *People v. Inman*, 315 Mich. 456, 471-472; 24 NW2d 176 (1946); *People v. Coffman*, 45 Mich.App 480, 488; 206 NW2d 795 (1973); *People v. Brocato*, 17 Mich.App 277, 290; 169 NW2d 483 (1969). Indeed, in cases of sexual assault, a conviction may "be based upon the uncorroborated testimony of the woman assaulted." *People v. Miller*, 96 Mich. 119, 121; 55 NW 675 (1893). In such cases, the victim's credibility is a matter left to the sole judgment of the jury. *Id.*

Here, the jury believed the victim's testimony and convicted defendant. In light of the strong, unwavering victim testimony, we cannot say that it is more probable than not that the jury would have acquitted defendant in the absence of the laboratory evidence. Accordingly, any evidentiary error in this case was not outcome-determinative, *Phillips, supra* at 396, and did not result in the conviction of an actually innocent person or otherwise prejudice defendant's substantial rights, *Carines, supra* at 763-764.

*Whittaker*, 2007 WL 914342, at *4-5.

Petitioner is not entitled to habeas relief on his claim for two reasons.

First, petitioner has failed to show that the admission of the non-testifying

13

expert's DNA report violated his Sixth Amendment right to confrontation.   Out of

court statements that are testimonial in nature are barred by the Sixth

Amendment Confrontation Clause unless the witness is unavailable and the

defendant has had a prior opportunity to cross-examine the witness, regardless

of whether such statements are deemed reliable by the court. *See Crawford v.*

*Washington,* 541 U.S. 36 (2004).  However, the Confrontation Clause is not

implicated, and thus does not need not be considered, when non-testimonial

hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006);

*See also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008).  Testimonial

statements do not include remarks made to family members or acquaintances,

business records, or statements made in furtherance of a conspiracy. *Crawford,*

541 U.S. at 51-52, 56.

In the present case, the DNA report in question was a document that is

kept ordinary in the course of business and, therefore, would survive a

Confrontation Clause challenge, because it most likely would have been

admissible under the business records exception to the hearsay rule found in

M.R.E. 803(6).  Being that business records are non-testimonial, DNA test

results contained within these reports were admissible and did not violate

petitioner's right to confrontation. *See Valentine v. Alameida*, 143 Fed. Appx.

782, 784 (9th Cir. 2005)(state court's admission of DNA test results as business

records did not deprive defendant of his rights under the Sixth Amendment's

14

Confrontation Clause; the record at issue was prepared in the routine course of business and was introduced by a competent expert who could be questioned about the limitations of the information presented).  Admission of the DNA report was not hearsay and did not constitute a violation of petitioner's constitutional rights under the Confrontation Clause.

Furthermore, Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones*, 274 F. 3d 329, 334 (6th Cir. 2001).  In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski*, 590 F. 3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

15

Petitioner has failed to show that admission of the DNA report by the office supervisor, rather than the individual who performed the test, had a substantial and injurious effect or influence on the verdict.  The Court of Appeals found that any error would not be outcome-determinative because the prosecution presented overwhelming evidence of petitioner's guilt at trial. *Whittaker*, 2007 WL 914342, at *4-5.  The arresting officers' testimony fully corroborated the victim's account. The victim's testimony was "strong and unwavering." *Whittaker*, 2007 WL 914342, at *5. "[T]he evidence showed that [Petitioner] was found in the empty basement apartment, that a window in the victim's building had been forced open, and that [Petitioner] possessed $200 in cash at the time of his arrest." *Whittaker*, 2007 WL 914342, at *4.  In light of the overwhelming evidence of petitioner's guilt, petitioner has failed to show that the admission of this DNA report at his trial had a substantial and injurious effect or influence on the jury verdict.  Petitioner is not entitled to habeas relief on his fifth and ninth claims.

### B.  Claim # 2.  Petitioner's post-conviction claims.

In his remaining claims, petitioner contends that he is entitled to habeas relief on several claims that he raised for the first time in his post-conviction motion for relief from judgment.  Petitioner alleges in Claim I that the trial transcripts are inaccurate and have adversely affected his ability to secure post-conviction relief; in Claim II, that there was insufficient evidence to sustain

16

his conviction; in Claim III, that the jury verdict was against the great weight of the evidence; in Claim IV, that he was denied a fair trial because the jury verdict was compromised and unsupported by evidence; in Claim VI,  that he is entitled to relief because he was never charged with home invasion; in Claim VII, that he is entitled to relief because the trial judge was biased and abused her authority; and in Claim VIII, that he is entitled to reversal of his convictions as the jury was permitted to render a compromised guilty verdict that was unsupported by the proof of evidence.

Respondent contends that petitioner's remaining claims are procedurally defaulted because he raised them for the first time in his post-conviction motion for relief for judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims on his appeal of right.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is

17

actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

18

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Wayne County Circuit Court judge rejected petitioner's motion for relief from judgment, finding that petitioner had "failed to demonstrate either the 'good cause' to raise to such grounds on appeal or in a prior motion, and 'actual prejudice' resulting from the alleged irregularities. MCR 6.508(D)(3)(a-b)." *People v. Whittaker,* No. 05-007110-01, Slip. Op. at * 4 (Wayne County Cir. Ct. Mar. 17, 2009).  Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th

19

Cir. 2005).  The fact that the trial court may have also discussed the merits of

petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to

reject petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64

F. Supp. 2d 686, 695 (E.D. Mich. 1999).  A federal court need not reach the

merits of a habeas petition where the last state court opinion clearly and

expressly rested upon procedural default as an alternative ground, even though

it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267

(6th Cir. 1991).  Petitioner's remaining claims are procedurally defaulted.

   With respect to his post-conviction claims, petitioner alleges ineffective

assistance of appellate counsel as cause to excuse his procedural default.

Petitioner, however, has not shown that appellate counsel was ineffective.

   It is well-established that a criminal defendant does not have a

constitutional right to have appellate counsel raise every non-frivolous issue on

appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States

Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and
> impose on appointed counsel a duty to raise every 'colorable' claim
> suggested by a client would disserve the ... goal of vigorous and
> effective advocacy.... Nothing in the Constitution or our interpretation
> of that document requires such a standard."

> *Id.* at 463 U.S. at 754.

   Moreover, "[A] brief that raises every colorable issue runs the risk of

burying good arguments-those that, in the words of the great advocate John W.

Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington*] [2] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

---

[2] 466 U.S. 668 (1984).

21

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a fourteen page appeal brief which raised the fifth and ninth claims that petitioner raises in his current habeas petition.[3] Petitioner has not shown that appellate counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Wayne County Circuit Court in rejecting petitioner's post-conviction claims and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *See also Meade,* 265 F. Supp. 2d at 872.

Petitioner has failed to show cause to excuse his default. Because petitioner has not alleged or demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his post-conviction claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

---

[3]   *See* This Court's Dkt. # 23-8.

Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner's sufficiency of evidence claims are insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Malcum v. Burt,* 276 F. Supp. 2d at 677. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits. *Id.* 276 F. Supp. 2d at 677.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).  For the reasons stated by the Wayne County Circuit Court in rejecting petitioner's post-conviction

23

motion and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, petitioner has failed to show that his post-conviction claims have any merit.   In particular, the reasons justifying the denial of petitioner's procedurally defaulted claims were "ably articulated by the" Wayne County Circuit Court judge in rejecting the motion for relief from judgment, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins*, 328 Fed. Appx. 323, 324 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his remaining claims.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's

24

underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Petitioner is granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis status* if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

25

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.** .

**IT IS FURTHER ORDERED** that petitioner is granted leave to proceed on

appeal *in forma pauperis*.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  July 31, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager